# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1176 | **DATE** | 8/21/2001 |
| **CASE TITLE** | THE AMERICAN BAR ENDOWMENT vs. MUTUAL OF OMAHA INSURANCE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant Mutual of Omaha's motion for partial summary judgment is denied [30-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 2 4 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 45 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FOR DOCKETING 01 AUG 23 AM 8:53 | | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION.

DOCKETED

AUG 2 4 2001

AUG 2 4 2001

The AMERICAN BAR ENDOWMENT,

Plaintiff,

v.

MUTUAL OF OMAHA INSURANCE COMPANY,

Defendant.

Case No. 00 C 1176

The Honorable John W. Darrah

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Mutual of Omaha's Motion for Partial Summary Judgment on Plaintiff American Bar Endowment's Count I claim for interest credits. For the reasons stated herein, Defendant Mutual of Omaha's Motion for Partial Summary Judgment is DENIED.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings,

-1-

45

affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate through specific evidence that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Plaintiff American Bar Endowment ("Plaintiff" or "ABE") is a nonprofit corporation incorporated under the laws of the State of Illinois with its principal place of business in Chicago, Illinois. (Def.'s 56.1 ¶ 1). Defendant Mutual of Omaha ("Defendant" or "Mutual") is a corporation incorporated under the laws of the State of Nebraska with its principal place of business in Omaha, Nebraska. (Def.'s 56.1 ¶ 2). Mutual is licensed to do business in the State of Illinois and is engaged in the business of selling contracts of insurance nationwide. (Def.'s 56.1 ¶ 3).

This case involves two insurance policies Mutual issued to ABE. (Def.'s 56.1 ¶ 4,5). Both policies include a provision which states:

> This policy may be changed (including the reduction of termination of benefits or the increasing of premium) any time the Holder and the Company both agree to a change. No one else has the authority to change this Policy. A change in this Policy:
>
> ***
>
> (b) must be:
>
> (1) in writing;
> (2) made part of this Policy; and
> (3) signed by an officer of the Company.

(Def.'s 56.1 ¶ 7). Neither policy contains a provision obligating Mutual to provide interest credits to ABE. (Def.'s 56.1 ¶ 8).

In connection with the insurance policies, ABE was required to maintain a contingency reserve as a limited form of security in the event that the group's claims experience was unfavorable. (Def.'s 56.1 ¶ 9). The rights and obligations of ABE and Mutual with respect to the contingency reserve were redefined in the "Contingency Reserve Agreement," which took effect on November 1, 1992. (Def.'s 56.1 ¶ 10). The Contingency Reserve Agreement did not incorporate terms that would require Mutual to provide interest credits to ABE. (Def.'s 56.1 ¶ 11). The Contingency Reserve Agreement was to remain in force only "as long as the Policies continue in force," with Mutual's only continuing obligation being the requirement that it provide annual accounting statements for the next four years following termination. (Def.'s 56.1 ¶ 12).

For a period of years before ABE terminated its Disability Policies, Mutual did allow interest credits on its reserves. (Def.'s 56.1 ¶ 13).

On May 24, 1991, a Mutual employee sent a letter to Charles Lynch, Executive Director of ABE, requesting that ABE transfer additional reserves of $1,415,752 to Mutual. (Pl. Ex. 3). The

letter stated, in relevant part:

> After considering all factors, i.e. low "monies" earnings, lack of Contingency Fund, and the appropriateness of the running seven-year turnover in interest credits, we offer the following recommendations:
>
> 1. $1, 415, 752 be transferred to Mutual to establish the IBNR reserve to become a part of the Annual Statement.
>
> 2. A Contingency Reserve of 10% of the annual premium will be maintained within the Contingency Deposit Agreement.
>
> 3. Future interest credit on reserves will be based on 7 year U.S. Treasury Bonds with a phase-in approach as previously outlined.

(Pl. Ex. 3). The funds were transferred. (Pl.'s 56.1 ¶ 3). On June 29, 1994, ABE asked in writing whether Mutual would continue to pay interest credits on policy reserves it held if the disability policies were terminated. (Def.'s 56.1 ¶ 14). On July 8, 1994, Mutual responded in writing to ABE, stating that "[a]ll interest credits terminate on contract termination." (Def.'s 56.1 ¶ 15).

Effective November 1, 1994, ABE terminated the disability policies. (Def.'s 56.1 ¶ 16). Upon termination of the policies, Mutual discontinued paying interest credits to ABE at the rates paid prior to termination. (Def.'s 56.1 ¶ 17). Mutual retained the reserves for a period of time after termination of the policies. (Pl.'s Ex. D2).

ABE asserts that the "well established customs and practices of the insurance industry" dictate that Mutual continue to pay interest credits after cessation of the policies. (Pl.'s 56.1 ¶ 4). For purposes of this Motion, both parties concede that the claim is governed by Illinois law. (Def. Reply, n. 1).

## DISCUSSION

In Count I of its Complaint, ABE alleges that Mutual has breached its contractual obligation under the policies by "paying Interest Credits to the Endowment on an improper basis, rather than

-4-

in accordance with the basis it employed in calculating and paying Interest Credits prior to termination of the Disability Income Program." (Compl. ¶ 35).

Defendant Mutual has moved for summary judgment on this claim, arguing that it is not obligated to pay any interest credits under the disability policies. (Def. Mot. 2).

The parties do not dispute that Illinois law controls. "Under Illinois law, the interpretation of an insurance policy, even an ambiguous policy, presents questions of law that are appropriately resolved by summary judgment." *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998). ABE responds to Mutual's Motion by arguing that the May 24, 1991 letter, the ensuing communication, and ABE's eventual transfer of funds [hereinafter "the agreement"] constituted a separate enforceable contract which obligated Mutual to provide the interest credits.

To constitute a separate enforceable contract, the alleged agreement must contain an offer, acceptance, and consideration and be "sufficiently definite so that its terms are reasonably certain and able to be determined." *Halloran v. Dickerson*, 679 N.E.2d 774, 781 (Ill. App. Ct. 1997). "A contract is sufficiently definite and certain to be enforceable if the court is able, from its terms and provisions, to ascertain what the parties intended, under proper rules of construction and applicable principles of equity." *Id.* A contract is still enforceable, even though some terms may be missing, as long as there is a basis for deciding whether the agreement has been kept or broken. *Academy Chicago Publishers v. Cheeve*, 578 N.E.2d 981, 984 (Illinois 1991).

Plaintiff ABE has met its burden of showing disputed issues of material fact which preclude summary judgement. A reasonable juror could find that the agreement embodied in the May 24, 1991 letter and ensuing conduct constituted a separate enforceable contract. A reasonable juror might conclude that the May 24, 1991 letter constituted an *offer*, while ABE's decision to transfer

the funds pursuant to the letter constituted an *acceptance*. A reasonable juror might also find that the transfer of funds to ABE constituted valuable consideration for which Mutual was obligated to adhere to its "recommendation" regarding the payment of interest credits in its May 24, 1991 letter.

Defendant ABE contends that the agreement cannot constitute a separate binding contract because of its indefiniteness as to duration. (Def. Reply 4,5). However, under Illinois law, "where a contract does not specify a time for performance of a particular obligation, a 'reasonable' time is implied." *Nelson v. Sotheby's, Inc.*, 128 F.Supp.2d 1172, 1175 (N.D. Ill. 2001)(citing *Clay v. Harris*, 592 N.E.2d 1154, 1158 (Ill. App. Ct. 1992). Once more, based on the present record, a reasonable juror might conclude that payment of the interest credits was a precondition to transfer of the additional reserve so that the obligation continued as long as the reserve was held by Mutual. At any rate, a question of fact exists as to the parties' intent. This precludes summary judgment. *See e.g., Quake Construction, Inc. v. American Airlines, Inc.*, 537 N.E.2d 863, 866 (Ill. App. Ct. 1989).

## CONCLUSION

For the reasons stated herein, Defendant Mutual of Omaha's Motion for Partial Summary Judgment [30] on Plaintiff American Bar Endowment's Count I claim for interest credits is DENIED.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: August 22, 2001